### PETTY v. ADAMS et ux.

No. 8231—Opinion Filed Jan. 30, 1917.

(162 Pac. 1082.)

**Subrogation—Right—Fraud.**

One who defrauds or assists in defrauding another out of his property is not entitled in equity to be subrogated to the rights of mortgagees whose debt has been satisfied by such fraudulent grantee while in possession.

(Syllabus by Burford, C.)

Error from District Court, Washita County; Thomas A. Edwards, Judge.

Action by Mary E. Petty against John L. Adams and wife. Judgment for defendants, and plaintiff appeals. Affirmed.

S. C. Burnett, for plaintiff in error.

R. A. Billups, for defendants in error.

Opinion by BURFORD, C. The facts pertinent to a decision in this cause are as follows: One John L. Gilliland traded certain lands in Texas to John L. Adams and wife, receiving in return a deed to certain lands in Washita county, Okla., the property of the Adamses. Thereafter Gilliland sold and conveyed such land to Mary E. Petty. There was a mortgage on the land executed by the Adamses to the Waddell Investment Company. Adams and wife brought suit against Gilliland, Petty, and others to set aside the conveyance of the Washita county land for fraud in the inducement thereto. They were successful in the action against all the

defendants, and the judgment therein became final. Meanwhile Mrs. Petty, while in possession of the land, had paid certain portions of the Waddell mortgage, and certain taxes then due and unpaid by the Adamses. After final judgment in Adams' suit, she brought the present action seeking to be subrogated to the rights of the mortgagee and the state against the land and to enforce such rights so as to effect a repayment to her of the amounts allowed for taxes and upon the mortgage, alleging that she made the payment in good faith, and took her deed to the land bona fide. Defendants set up the pleadings and judgment in the suit of Adams v. Gilliland, Petty et al., and pleaded res adjudicata, and that under the judgment therein Mrs. Petty was not entitled to recover. They also denied generally the allegations of the petition. Upon the trial, Mrs. Petty introduced the paid notes and mortgages and the tax receipts, made proof of the deeds to her, and rested. Defendants introduced the pleadings and judgment in the prior suit and rested. Thereupon the court rendered judgment for defendants. From this judgment, plaintiff brings the case here for review.

The sole question necessary to determine is whether or not a fraudulent grantee, or one who assists such grantee in perpetrating the fraud, is entitled to be subrogated to the rights of the incumbrancers whose debts such grantee, while in possession, has satisfied.

Two of the cardinal maxims of equity jurisprudence since the earliest times are, "He who comes into a court of equity must come with clean hands," and, "He that had committed iniquity shall not have equity." Applying these maxims, it seems clear that one who by fraud induces another to part with his property is not entitled to the active intervention of a court of equity to enable him to recover anything which he has lost by reason of the fraudulent transactions being set aside. The rule is well stated by the Supreme Court of North Dakota in Roller Mills v. Ward, 6 N. D. 317-326, 70 N. W. 271, 274, a case similar upon the facts to the one at bar:

"It is not the true province of a court of equity to punish a party for fraud. That is left to the courts of law. Neither will it despoil him of his property. But when it becomes necessary for a party to invoke the equity powers of the court to obtain relief from a position in which he has voluntarily placed himself—when it becomes necessary for him to assume the position of actor, and appeal to equity for affirmative relief—then he must come with clean hands. This prin-

ciple is as old as equity jurisdiction, and knows no exceptions. The very term 'equity' bars whatever savors of fraud or wrong. He who appeals to equity for relief from a position in which his own fraud has placed him must ever fail. Equity will leave him where it finds him, irrespective of the financial results to himself. 'He that committed iniquity shall not have equity.'"

Justice Bradley, speaking for the Supreme Court of the United States, in M. & M. T. Co. v. Soutter, 13 Wall. 517, 20 L. Ed. 543, said:

"Was it ever known that a fraudulent purchaser of property, when deprived of its possession, could recover for his repairs or improvements, or for incumbrances lifted by him whilst in possession? If such a case can be found in the books, we have not been referred to it. Whatever a man does to benefit an estate, under such circumstances, he does in his own wrong. He cannot get relief by coming into a court of equity."

Chancellor Kent, speaking of a similar case (Sands v. Codwise, 4 Johns. [N. Y.] 598, 4 Am. Dec. 305), said:

"I presume there is no instance to be met with of any reimbursement or indemnity afforded by a court of chancery to a particeps criminis, in a case of positive fraud."

And Judge Story (Bean v. Smith, Fed. Cas. No. 1174) says that:

"All the reasons of public policy * * * command the court to be rigid in denying to those who are guilty of bad faith any such indulgence. Let them reap the due reward of their own misconduct."

Relief in cases similar to the one at bar was denied in Goble v. O'Connor, 43 Neb. 49, 61 N. W. 131; Hawley v. Tesch, 88 Wis. 214, 241, 59 N. W. 670; Guckenheimer v. Angevine, 81 N. Y. 394; Boyer v. Bolender, 129 Pac. 324, 18 Atl. 127, 15 Am. St. Rep. 723; Greig v. Rice, 66 S. C. 172, 44 S. E. 729; Bates v. Swiger, 40 W. Va. 420, 21 S. E. 874; and Devine v. Harkness, 117 Ill. 145, 7 N. E. 52.

But it is urged that Mrs. Petty did not actively participate in the fraud on the Adamses, and that her knowledge thereof was but constructive, and New v. Smith, 94 Kan. 6, 145 Pac. 880, L. R. A. 1915F, 771, decided by the Supreme Court of Kansas, is cited to support her right to recover. It was there held that one who took title "with notice of facts sufficient to put him upon inquiry leading to knowledge of the fraud of one of his grantors" might not be ousted from possession of the land, at the suit of the party defrauded, until he was reimbursed for mortgages upon the land paid by him. A number of the courts have awarded relief

in like cases to one who is only constructively tainted with fraud. Judge Story notes the exception in Bean v. Smith, supra, and both sides of the question are discussed in many of the cases heretofore cited. See, also, White v. Trotter, 14 Smedes & M. (Miss.) 30, 53 Am. Dec. 112; Arnold v. Hoschildt, 69 Minn. 101, 71 N. W. 829; Clements v. Nicholson, 6 Wall. 299, 18 L. Ed. 786. In New York, if not in other states, where the defrauded party is the active movant, as in a suit to recover rents collected by the fraudulent grantee while in possession, such grantee is allowed to offset amounts paid upon incumbrances, taxes, etc., upon the ground that in such case the grantee is not seeking the aid of equity but is merely on the defensive. Loose v. Wilkinson, 113 N. Y. 488, 21 N. E. 392, 4 L. R. A. 353, 10 Am. St. Rep. 495, and cases cited. None of these cases, however, appear to be applicable to the case at bar, and it is therefore not necessary that we pass upon the doctrine therein announced, further than to distinguish their applicability to the instant case. If Mrs. Petty was only constructively a party to the fraud upon the Adamses, if her deed was canceled merely because she had knowledge of facts sufficient to put her upon notice, these things do not appear in the record before us. There was no such proof upon her part, although she pleaded such a state of facts. The petition in the former case alleged, not only that the deed from Gilliland to Mrs. Petty "was not made in good faith," but that she was at the time of taking her deed "in possession of facts to the fraud practiced by said J. N. Gilliland," and "took said warranty deed for the purpose and with the intention of aiding and assisting the said J. N. Gilliland" and his coconspirators "in defrauding the plaintiffs herein (the Adamses) out of their rights and to place said land beyond the reach of the plaintiffs in this action," and that "said Mary E. Petty took said deed with full knowledge of the rights and interests of plaintiffs herein to said tract of land." These allegations Mrs. Petty denied, but upon that cause being tried to a jury they returned a verdict for plaintiffs that Mrs. Petty's deed be canceled. This is all the evidence before us as to Mrs. Petty's participation in the fraud upon the Adamses. Under it we cannot say that Mrs. Petty's knowledge was only constructive. Though ordinarily the burden is upon a party alleging fraud to prove it, yet, when that fraud has been established in general terms by a judicial decree, if there be any competent evidence which will tend to lessen its apparent force, we think the burden was upon Mrs. Petty to produce it.

For the reasons given, the judgment should be affirmed.

By the Court: It is so ordered.