**LAHMAN et al. v. BEAUCHAMP et al.**

No. 17724. Opinion Filed Jan. 3, 1928.

(Syllabus.)

1. **Equity—Binding Effect of Tender in Trial to Do Equity.**

The party making a tender in the trial of a cause for the purpose of doing equity is bound by such tender.

2. **Same—Trusts—Tender by Party Suing for Interest in Real Estate Invested In.**

Where a person uses his own funds for

the purchase of real estate and another awaits the stage of a profitable investment rather than to enter the original venture, and then the latter seeks an interest and by force of chancery makes a tender, such person is not favored in equity, but is bound by his tender.

Error from District Court, Pawnee County; Z. I. J. Holt, Judge.

Action by C. E. Lahman et al. against John L. Beauchamp et al. From the judgment, plaintiffs bring error. Affirmed.

O'Meara & Silverman, for plaintiffs in error.

N. E. McNeill and F. B. Dillard, for defendants in error.

RILEY, J. Plaintiffs in error commenced this action in the court below in November, 1923, to recover a one-half interest in an oil and gas lease from defendants, who held the legal title. It was alleged that defendants had paid all of the purchase price for the lease, had drilled an oil and gas well thereon, discovered oil and gas in paying quantities, and that plaintiffs were at all times ready and willing to pay one-half of the purchase price of the lease and one-half of the cost of drilling, equipping, and operating the lease. They prayed for an accounting.

Thereafter plaintiffs filed an amended petition, where they alleged that prior to March, 1923, defendants Mason and Beauchamp were the owners of an oil and gas lease on a certain ten-acre tract of land; that during August, 1922, plaintiffs and defendants entered into a mining partnership for the purpose of prospecting for oil and gas on a lease described as tract No. 1, and it was agreed that Mason and Beauchamp should secure an oil and gas lease on two other tracts of land, and that plaintiffs should have a one-half interest in said lease, and Mason and Beauchamp should own the other interest; that thereafter it was agreed the lease should be obtained on the tract of land over which this controversy arose, and that Lahman and Paymal were the persons designated to purchase the same, and the same was to be owned one-half by plaintiffs and one-half by defendants. Notwithstanding this, it is alleged, Mason and Beauchamp purchased an assignment of a lease on said tract and took title in their own names and refused to assign a one-half interest to plaintiffs, although plaintiffs were ever willing and able to pay one-half the amount expended for the lease; that inasmuch as the said lease under the assignment would soon expire, Mason and Beauchamp

obtained a new lease from the landowner and refused to assign a one-half interest to the plaintiffs, notwithstanding plaintiff's ability and willingness to pay therefor; that Mason and Beauchamp caused a well to be drilled upon said lease which produced oil and gas in paying quantities; that plaintiffs always were and are now ready, willing, and able to pay all reasonable costs and expenses incident to the drilling and operation of said lease described as tract No. 4, but the defendants failed and refused to recognize plaintiffs as one-half owners thereof, and failed and refused to give an accounting of their income or expenses.

It was then alleged that defendants transferred the lease to the Mason-Beauchamp Oil Company, and the prayer of plaintiffs was: (a) That this court decree one-half interest in and to the oil and gas lease to be declared to be in plaintiffs; (b) that defendants be required to execute said trust by executing and delivering an assignment to plaintiffs of a one-half interest in and to said lease described as tract No. 4 upon payment of one-half of the reasonable expenses, payments, and charges connected with the purchase of said lease, the operation of the same, and the drilling of said well; (c) that an accounting be had and judgment rendered in accordance with said accounting.

Defendants answered and prayed for damages against plaintiffs for clouding their title on account of their having filed an affidavit of record wherein they claimed an interest in the lease in controversy.

A demurrer was sustained to part of the answer, and plaintiffs filed a reply to the remainder.

On April 21, 1925, the defendants Mason and Beauchamp filed a substituted answer and disclaimed any interest in the oil and gas lease and alleged the same was held by the Mason-Beauchamp Oil Company. On the same day the Mason-Beauchamp Oil Company filed a substituted answer and alleged:

"That the said defendant herein concedes to the prayer of the plaintiffs herein, and in compliance with said prayer tenders into court, for the use and benefit of the plaintiffs herein, an assignment of an undivided one-half interest in and to the oil and gas lease, dated June 29, 1923, assigning to said plaintiffs herein an undivided one-half interest in and to said oil and gas lease."

And further set out:

"* * * And said defendant joins in the prayer of plaintiffs' petition, to wit: That an accounting be had between said plaintiffs

and defendant, and upon said accounting, there to be charged to the plaintiffs' one-half of the expense, payment, and charges in connection with the purchase of said lease and the operating of same and of the drilling and equipment of said oil lease, and the producing of oil and gas, and that said defendants account to the plaintiffs for one-half of all proceeds received from the sale of oil and gas from said premises."

The cross-petition set up that defendants had paid the following items:

Purchase of lease _____$1,078.00
Drilling of well _____ 7,662.50
In equipping the well _____ 2,187.26

—and in addition that there had been expended the sum of $7,311.44 for operating said lease, which amount had been agreed to by the plaintiffs and defendants. Defendants attached an itemized account of each item, and further prayed for allowance for reasonable value for superintendence of the lease, keeping of the books, and prayed judgment for $9,144.80.

On April 25, 1925, the defendant filed their tender into court and delivered the assignment of the lease in controversy to the court clerk.

On May 20th, the plaintiffs filed a demurrer to the answer of defendants. It was overruled. Whereupon plaintiffs filed a reply. It was stricken. On July 10th, plaintiffs filed an amendment and supplement to the amended petition. On motion the court struck it. On October 17th, plaintiffs replied alleging bad faith on the part of defendants and substituting, in lieu of their special prayers contained in the original petition, a prayer that they have judgment for one-half of the value of the lease prior to the time it was drilled upon, alleged to be the sum of $5,000, less one-half the purchase price, or that in case the court did not grant the relief prayed for, plaintiffs be permitted to dismiss any action against defendants with prejudice, and that accounting be denied.

Thus the action went to trial on January 12, 1926. The defendants assumed the burden of proof on the accounting, and produced evidence as to the cost of the lease, the drilling of the well and operating expenses, and introduced a stipulation entered into by plaintiffs agreeing that the operating expenses were $7,311.44, and that if the plaintiffs should prevail the defendant would be liable for one-half of said amount, and a similar stipulation of the date of January 23, 1925.

The plaintiffs introduced the original answer and cross-petition of defendants and produced Messrs. Lahman and Paymal as witnesses regarding cost of drilling and equipment in the vicinity. Thus the proof ended.

The court made findings as to cost of equipment and operating expenses and charged plaintiffs one-half the amount and found the amount received from the sale of oil, gas, and water and credited plaintiffs with one-half that amount.

The plaintiffs, for reversal, contend that defendants are not entitled to affirmative equitable relief or accounting for the reason of having committed iniquity.

The plaintiffs sought the forum of equity, and in order to be heard there it was necessary that they allege themselves to have done, or offered to do, or to be willing to do, all on their part necessary to entitle them to the relief sought. 21 C. J. 400.

Plaintiffs did this in the manner following: They demanded an assignment of one-half interest in the lease and an accounting. They offered to do equity and tendered to the court one-half the cost or purchase price of the lease and one-half the cost of drilling and equipping the well, and one-half of the operating expense.

The Circuit Court of Appeals of the Eighth Circuit, in Wm. Cameron & Co. v. Campbell, 141 Fed. 33, held:

"Where, in a suit to enforce a mechanic's lien, the owner of the property tenders a sum less than that claimed, such tender is an admission of the validity of the lien to that extent, and the court should decree its enforcement for the amount tendered, even though it is adjudged that the lien is invalid."

This court in Lasoya Oil Co. v. Zulkey, 40 Okla. 690, 140 Pac. 160, held:

"* * * The party making a tender in the trial of a case for the purpose of doing equity is bound by such tender."

Such is the uniform holding of courts. Where a person makes a tender in court, he admits that the amount he offers and tenders is due; so plaintiffs were bound by their tender, and defendants became bound likewise when they tendered into court, for the benefit of plaintiffs, the assignment of one-half interest in the lease.

Plaintiffs cite the case of Twin-Lick Oil Co. v. Marberry, 23 L. Ed. (U. S.) 331, and quote therefrom the following:

"* * * The injustice, therefore, is obvious

of permitting one holding the right to assert an ownership in such property to voluntarily await the event, and then decide, when the danger which is over has been at the risk of another, to come in and share the profit."

We do not see how this can benefit plaintiffs, for they had a right to assert ownership to the lease in March, 1923; they merely filed an affidavit clouding defendants' title; they took no action to enforce their claim, but voluntarily awaited the result of drilling by defendants at defendants' risk and expense, and when oil was produced, they came into a court of equity, offered their prayer, and made tender of an amount they considered equitable.

Their adversaries, instead of being contentious, were agreeable and accepted the tender and acceded to the prayer, but now plaintiffs desire to secure one-half of the profits and withdraw their tender of one-half the expense.

We follow the rule announced in Lasoya Oil Co. v. Zulkey, supra, wherein this court, in paragraph 2 of syllabus thereof, held:

"The party making a tender in the trial of a cause for the purpose of doing equity is bound by such tender."

Many cases are cited by plaintiffs not applicable here; most of these holding:

"Where the trust fund was used by the the trustee as his own and all investments were made by him in his own name, such trustee cannot charge the trust with the losses he has sustained."

The case cited of Mickelson v. Helm, 8J Okla. 90, 214 Pac. 117, is not applicable, there being no production in that case and there being no tender, as the interests there were originally jointly owned and paid.

The cases of Royer v. Dobbins, 111 Okla. 156, 239 Pac. 157, and Petty v. Adams, 65 Okla. 60, 162 Pac. 1082, are not applicable in failing to conform to the facts here.

In such cases the trustee is not favored with equity, but where a person uses his own funds for the purpose, and another awaits the stage of a profitable investment rather than enter the original venture, and then seeks an interest, and by force of the requirements of chancery makes a tender, such person should not be favored in equity, but should be bound by his tender.

Roleman Manufacturing Co. v. Universal Hardware Works, 238 Fed. 568, states the rule:

"The maxim that he who seeks equity must do equity is a duty which makes one who gets into a court of equity continue to do equity while he is litigating."

The plaintiffs contend that defendants are trustees ex maleficio, and therefore not entitled to a contribution for losses, but should be accountable for one-half of the profits.

This we have considered and hold against them in our view heretofore set out.

The plaintiffs should not be permitted to stand idly by, only clouding the title of defendants by filing an affidavit claiming an interest, permit the lease to expire by its own limitations, suffer the defendants to obtain a new lease, encounter the risk of drilling an oil well, and take no further steps to enforce their assertion, then to tender one-half the cost and be permitted to withdraw their prayer and their tender and secure one-half the profit.

It is next contended that plaintiffs in no event are liable for any amount in excess of expenses reasonably and actually incurred; and if the actual expenses incurred are less than what otherwise would be a fair value for such services, then the plaintiffs, if liable for accounting at all, should be held accountable only to the extent of one-half the expenses incurred.

The court below found the amount of expenses incurred, deducted the amount received from sale of oil, and rendered judgment against plaintiffs in the amount of one-half thereof, or the sum of $8,066.45. Plaintiffs in assailing this finding of fact fail to set out any evidence tending to show wherein the findings are not supported by the evidence. They merely assert the well did not cost what the court found it to cost. The record (C.-M. p. 129) shows the cost of the well at $2.25 per foot; that that amount was the usual and customary price in that vicinity at that time. It is true that the record reveals that the defendants delivered certain stock to the driller in part payment of drilling, but the evidence shows that at that time the stock was worth the amount paid for it This contention is without merit.

The defendants, to further justify their action and conduct and to overcome the charges of having committed iniquity, set out that plaintiffs were, during the pendency of this suit, operating a lease with two oil wells offsetting the well on the tract in controversy, which wells continuously drained the oil on defendants' lease, and that plaintiffs' act in filing an affidavit claiming an in-

terest in the lease in dispute prevented the defendants from further development and at the same time by the claim and litigation the value of their lease was greatly reduced by drainage, and defendants were, pending the litigation, prevented from selling their holdings for a profitable sum.

The defendants further challenge the record to show that at no time did they admit the claim or charges of plaintiffs, but denied them vigorously, however, conceding to the prayer of the plaintiffs' petition at the same time, by their substitute answer (C.-M. p. 68), having declared the claim of plaintiffs to the lease to be without foundation.

While it is true the plaintiffs attempted to withdraw their tender, however, plaintiffs did not so act until after the acceptance and the assignment of a one-half interest in the lease was filed in court. We are forced to hold under the authorities that at such a stage of the proceedings the plaintiffs could not withdraw their tender, nor avoid any detriment brought upon themselves by their tender and eagerness to secure a beneficial interest as they evidently calculated the same to be in their initial steps. 26 R. C. L. 40; 38 Cyc. 163.

The judgment is affirmed.

BRANSON, C. J., and MASON, LESTER, PHELPS, CLARK, and HEFNER, JJ., concur.