## GERMAN BANK OF MEMPHIS v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 693. Submitted March 30, 1893. — Decided April 10, 1893.

The United States cannot be held liable in the Court of Claims for the amount of registered bonds which the Register of the Treasury cancels without authority of law, not being liable for non-feasances, or mis-, feasances or negligence of its officers.

The only remedy in such case is by appeal to Congress.

The plaintiffs, having been held liable to the owners of bonds so improperly cancelled as parties to the transaction, are not entitled to be subrogated to the heirs of the estate in the suit against the United States; since a person who invokes the doctrine of subrogation must come into court with clean hands.

THIS was a petition by the German Bank of Memphis, as successor of the German National Bank of Memphis, and the Chemical National Bank of New York, against the United States, to recover the amount of three registered bonds alleged to have been wrongfully cancelled by the Register of the Treasury under the following circumstances:

In 1869, one Henry P. Woodward died in Shelby County, Tennessee, leaving a will in which he directed that certain insurance money due his estate should be invested in United States interest-bearing bonds, with coupons attached, which coupons were to be given to his wife, Sallie, as they fell due, for her support and the support and education of her child; and that when the child should arrive at the age of 21 years, the bonds should be divided between the said child and its mother, equally, one Marcus E. Cochran being appointed sole executor of the will.

The will was admitted to probate in November, 1869, and Cochran qualified as executor. Having a balance of insurance remaining after paying the debts, he invested the same in three registered bonds of five thousand dollars each, in which it was certified that "the United States of America are

indebted unto M. E. Cochran, executor or assigns, the sum of five thousand dollars," etc. "This debt is authorized by act of Congress, approved March 3, 1865, and is transferable on the books of this office."

Cochran collected the interest on these bonds regularly, and paid the same to the widow of the testator, as provided in the will, until May, 1873, when he died. On September 9, one James A. Anderson, public administrator, was appointed by the probate court administrator *de bonis non* of Woodward's estate, duly qualified as such, and three days thereafter obtained these bonds from the Union and Planter's Bank of Memphis, in whose custody they had been, and by which the interest had been collected and paid over, giving therefor a receipt as administrator. He subsequently gave another receipt to the attorney of Mrs. Cochran, as administrator of her deceased husband.

In December, 1876, Anderson, who had long been a depositor in the German National Bank, and a man of high standing, took two of these bonds to this bank and requested it to sell them, saying that he wanted to invest for a better interest; that he could get ten per cent for the money, at the same time showing a paper from the Treasury Department at Washington, which in some way recognized his authority to transfer the bonds, but by whom the paper was written and the exact terms of it do not appear, no copy of the same being in evidence. The bank sent the bonds to the Chemical National Bank of New York by express, with a letter directing them to sell the same and place the proceeds to their credit, adding, "Judge J. A. Anderson filed the proper papers with the department, as per memo. enclosed. We do not wish to be responsible after paying the funds over here for any irregularity in papers."

On receiving these bonds, the Chemical National Bank wrote to the Register of the Treasury, notifying him of the receipt of the bonds from the German National Bank, describing them as "No. 7701, to order M. E. Cochran, executor, of Memphis, Tenn. $5000 do. No. 6081, to order of M. E. Cochran, executor, $5000, which said bank request us to sell,

but distinctly state they do not want to be held responsible after paying the funds over for any irregularity in papers, which I herewith enclose. We desire to comply with the wishes of the German Nat., but do not wish to be responsible for regularity, etc., and therefore refer the case to you. Please inform us what action to take. The certificates are assigned in blank by J. A. Anderson, adm'r of H. P. Woodward, deceased, and appear to have been witnessed by a notary public, having his official seal attached. If you are willing, we will forward them for registration in our own name, as in their present shape they are not a good delivery in this market."

The Register replied to this, and stated: "There is on file in this office satisfactory power in favor of your bank to transfer the bonds referred to, and a reassignment by your Mr. Jones as pres't to any party purchasing will be recognized, or if preferred new bonds will be issued to your bank under the present assignment." The bank replied to this letter, under date of December 28, 1876, and requested the Register to issue new bonds in the name of "the Chemical National Bank of N. Y."

In January, 1877, Anderson took the third bond to the German National Bank, by which it was transferred to the Chemical National Bank with similar instructions. The latter bank transferred the bond to the Treasury Department, which thereupon issued to the Chemical National Bank three new bonds, in which it was certified that "the United States of America are indebted to the Chemical National Bank of New York, or assigns, in the sum of five thousand dollars," etc. The Chemical National Bank of New York having thus obtained title to these bonds, sold the same and transferred the proceeds, $16.840.60, to the German National Bank of Memphis, where they were passed to the personal credit of said Anderson, drawn out by him from time to time on his personal checks, and lost to the beneficiaries by conversion to his own use.

The original bonds had borne upon their back a blank form of assignment, executed by Anderson, with certain instruc-

tions, among which were that the execution of the assignment must be witnessed by a public officer, attested by his official seal, and that "executors, administrators and trustees, when the stock stands in the name of the person they represent, must furnish legal evidence of their official character to be filed." The regulations of the Treasury Department at this time required that "in case of death or successorship, the representative or successor must furnish official evidence of decease and appointment. An executor or administrator may assign stock standing in the name of a deceased person. Where there is more than one legal representative all must unite in the assignment, unless, by a decree of court or provision of will, some one is designated to dispose of the stock. If the stock was held by the deceased as a fiduciary, the letters of administration must be accompanied by an order of the court authorizing the transfer."

When taken to the German National Bank of Memphis the blank form of assignment had been filled out, (except the name of the assignee, for which a blank was left), signed by Anderson, and executed before a notary public.

In 1872, the widow of said Woodward married Thomas H. Covington, who died in 1884. Anderson paid her the interest on the bonds up to 1880, when he failed, and the payments ceased. During that year a bill was filed in the equity court by Covington and wife and Henriella P. Woodward, minor child of testator, against Anderson, who had become insolvent, the German National Bank of Memphis, the Chemical National Bank of New York, and others, defendants, charging Anderson with a breach of trust in the sale of the bonds and the conversion of the proceeds to his own use, and the two banks with participating therein by receiving and selling the bonds charged with notice of the trust. The final result of this suit after trial in the Chancery Court of Memphis, and in the Supreme Court of Tennessee on appeal, was a decree against the two banks in favor of the plaintiffs in the sum of $23,211.82, that being the principal and interest of the bonds so converted. *Covington* v. *Anderson*, 16 Lea, 310.

Subsequently, the two banks paid the amount of this judgment to a trustee appointed by the Chancery Court, and on November 22, 1888, filed a petition in the Treasury Department for the payment of the money here claimed. The petition was referred to the Solicitor of the Treasury, who advised that the amount for which the bonds were sold should be paid by the government, but the Secretary of the Treasury thought the claim presented was not of such a nature as to be properly adjudicated by him. On March 12, 1889, another petition was presented to the Treasury Department, which decided that the government was not liable, and this suit was begun.

Upon a finding of facts, of which the above statement is the substance, the Court of Claims dismissed the petition, 26 C. Cl. 198, and the claimants appealed to this court.

*Mr. William S. Flippin, Mr. A. H. Garland* and *Mr. H. J. May* for appellants.

*Mr. Assistant Attorney General Maury* for appellees.

Mr. Justice Brown, after stating the case, delivered the opinion of the court.

The question in this case is whether the government can be held liable for the amount of certain registered bonds which the Register of the Treasury had cancelled without authority of law, plaintiffs themselves having been held liable to the owners of the bonds for having been parties to the transaction.

Briefly stated, the facts are that the bonds were originally issued to " M. E. Cochran, executor or assigns "; that Cochran having died, one Anderson was appointed administrator *de bonis non;* obtained possession of the bonds; took them to the German National Bank, and requested the bank to sell them for him, exhibiting a paper from the Treasury Department at Washington to the effect that, as the successor of Cochran in the administration of the estate, he had power to

transfer them. The bank sent them to the Chemical National Bank of New York, with a similar request to sell. The Chemical National Bank transmitted them to the Register of the Treasury, stating that neither the German National Bank nor the Chemical National Bank wished to be responsible for any irregularities in the papers. In reply, the Register stated that there was on file in that office satisfactory power in favor of the bank to transfer the bonds, and subsequently, at the request of the bank, issued new bonds to the "Chemical National Bank, New York, or assigns." These bonds were sold, the proceeds transmitted to the German National Bank at Memphis, passed to the personal credit of Anderson, and embezzled by him. Suit was thereupon begun against the two banks by the heirs of the estate represented by Cochran and Anderson, upon the theory that, as the bonds ran to "M. E. Cochran, executor or assigns," the banks were apprised of the fact that there was a trust of some kind impressed upon them, which could be ascertained by a reference to the will; and that they bore the unmistakable brand of the rights of ownership of others, without the slightest evidence of claim of any character on the part of Anderson.

Having paid the judgment against them, the banks filed this petition, claiming to be subrogated to the rights of the parties who had recovered against them, and to hold the government liable upon the ground that they were induced, by the act and conduct of the Register of the Treasury, to do what had been adjudged to be wrong on their part, and on account of which a decree had been taken against them.

Under these circumstances, are the plaintiffs entitled to maintain this suit against the government? Plaintiffs were held liable by the Supreme Court of Tennessee to the heirs of Woodward for the unlawful conversion of the bonds, the court holding that the banks received the bonds and disposed of them under circumstances showing that a breach of trust was meant by Anderson, and under such circumstances as to put them upon inquiry as to his title to the bonds and the motive prompting him to offer them for sale. The court held further that the fact that the bonds were payable to M. E.

Cochran, as executor, put them upon inquiry as to whose estate Anderson was administrator of; why there was no assignment upon the bonds; how Anderson came by them; by what authority he proposed to dispose of bonds created by a will when he was not himself the executor; why the bonds had been kept off the market so long; for whose benefit Anderson proposed to invest in securities at a greater rate of interest; and why he should do so when the bonds were a certain security. "These suggestions," said the court, "would have led at once to an inspection of the records, which would have discovered that Anderson had no right whatever to manage or control the bonds, and that his purposes were anything but honest. It was impossible to have read the bonds, however casually, without discovering that there was a trust of some character impressed upon them, which trust could be ascertained by reference to the will."

Plaintiffs now seek to hold the government liable upon the ground that the Register of the Treasury participated with them in such conversion. In other words, it is an attempt on the part of one wrongdoer, not merely to enforce contribution from another, but to hold him liable for the entire amount of damages occasioned by their joint negligence. It is only upon the theory that the Register exceeded his power that the plaintiffs have any possible standing. If his conduct in cancelling the original and issuing the new bonds was within the scope of his authority as Register of the Treasury, there is no possible reason for charging him or his principal with liability. Assuming, however, that he was guilty of negligence in reissuing these bonds upon insufficient evidence of the authority of the holder to demand such reissue, (as to which we express no opinion,) it was an act of negligence for which the government is not liable to these plaintiffs. It is a well settled rule of law that the government is not liable for the nonfeasances or misfeasances or negligence of its officers, and that the only remedy to the injured party in such cases is by appeal to Congress. This rule was applied in the cases of *United States* v. *Kirkpatrick*, 9 Wheat. 720, 735; *United States* v. *Vanzandt*, 11 Wheat. 184; *United States* v. *Nicholl*, 12 Wheat. 505; and

*Dox* v. *Postmaster-General*, 1 Pet. 318, cases of laches· in failing to prosecute delinquent officers within a reasonable time; in *Gibbons.* v. *United States*, 8 Wall. 269, to a case of alleged duress by a military officer; in *Jones* v. *United States*, 18 Wall. 662, to the negligence of the government in permitting a dishonest postmaster to remain in office; in *Hart* v. *United States*, 95 U. S. 316, to the negligence of an office of the United States in permitting the removal of distilled spirits from a distillery warehouse before the payment of taxes; in *Minturn* v. *United States*, 106 U. S. 437, to the unlawful act of a customs officer in giving up goods without the payment of duty; in *Moffat* v. *United States*, 112 U. S. 24, to certain frauds by officers of the United States in issuing land patents; and in *Robertson* v. *Sichel*, 127 U. S. 507, to the negligence of an officer of the customs in keeping a trunk of a passenger on the pier instead of sending it to the public store, so that it was destroyed by fire.

If this be treated as a case of *tort*, then it is clear that the government is not liable, not only upon the ground above stated, but because under the act of Congress conferring jurisdiction upon the Court of Claims, 24 Stat. 505, c. 359, there is an express exception of cases sounding in tort.

Plaintiffs, however, take the further ground that if, instead of suing the banks, Covington and his wife and daughter had sued in the Court of Claims upon the original bonds, the government could not have shown in defence that the bonds had been cancelled and reissued to the Chemical National Bank, since such cancellation was without authority.· Therefore they insist that, having paid these bonds themselves, they are entitled to be subrogated to the claim of the heirs of the estate, and to recover in their own names upon these bonds. ·There are difficulties, however, in sustaining this position. In the first place, the plaintiffs themselves had no contract with the government, and if they had, such contract was fully performed by the issuing of the new bonds to them. They are not entitled to be subrogated to the heirs of the estate, since their right of subrogation arises from certain conduct of theirs which was adjudged by the Supreme Court of Tennessee to be tortious.

It is said that a person who invokes the doctrine of subrogation must come into court with clean hands. Sheldon on Subrogation, § 44; *Railroad Co.* v. *Soutter*, 13 Wall. 517; *Wilkinson* v. *Babbitt*, 4 Dillon, 207; *Guckenheimer* v. *Angevine*, 81 N. Y. 394. They are unfortunately put in the position of claiming through the judgment of the Supreme Court of Tennessee, which held them liable for having participated in the alleged misconduct of the Register of the Treasury. As we hold that they are not entitled to invoke the doctrine of subrogation, it becomes unnecessary for this court to determine as an independent question whether the Register acted within the scope of his authority in cancelling and reissuing the bonds. The opinion of the Supreme Court of Tennessee would not be conclusive upon that point, the government not having been a party to that action.

Under no view that we have been able to take of this case can we hold the government liable, and the judgment of the Court of Claims is, therefore,

*Affirmed.*