**WALKER v. AMES et al.    (No. 1183.)**

(Court of Civil Appeals of Texas. El Paso. Feb. 24, 1921. Rehearing Denied March 24, 1921.)

**1. Landlord and tenant ⟨key⟩205—On conveyance of reversion grantee is entitled to accruing rentals unless reserved.**

On a conveyance of the reversion in fee, the grantee is entitled to the subsequently accruing rentals, unless the grantor expressly reserves them.

**2. Evidence ⟨key⟩434(3) — Parol evidence in avoidance of deed permissible under issue of fraud.**

It is permissible under the issue of fraud to offer parol evidence in avoidance of a deed.

**5. Mines and minerals ⟨key⟩55(1)—Grantee in mineral deed cannot avail himself of right to future accruing ground rentals acquired by fraud.**

Where there was a parol agreement between grantors and grantee in a mineral deed that ground rents accruing under a prior oil and gas lease were not to pass to the grantee, who was to acquire only an interest in the royalty to be paid by the lessee in case oil was developed, and he and his attorney misrepresented to the grantors that such was the effect of the deed, and that it did not pass the right to any of the ground rentals, on which representations the grantors relied, the grantee cannot avail himself of a right thus acquired by fraud, which avoided the legal effect of the deed so far as concerned future rentals.

**4. Trial ⟨key⟩352(1)—Special issue not improper as suggesting way it should be answered.**

In suit by an oil and gas lessee to determine the ownership of certain ground rentals accruing subsequent to execution of a mineral deed by the lessors, second issue submitted to the jury whether defendant grantors relied on certain statements and representations of the grantee (involved in the first issue), and whether they were thereby induced to issue the instrument in controversy, directing the jury to answer the same "Yes" or "No," held not improper considered as a whole, as suggesting the way it should be answered.

**5. Judgment ⟨key⟩256(2)—Judgment contrary to findings not permissible.**

It is not permissible to render judgment contrary to the jury's findings, though the trial

court has authority to set aside findings made by the jury.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by the Texas & Pacific Coal & Oil Company against J. B. Ames, B. S. Walker, and others, wherein William Black and another intervened. From the judgment, defendant Walker appeals. Affirmed.

McCartney, Foster & McGee, of Brownwood, for appellant.

Burkett, Anderson & Orr, of Eastland, for appellees.

HIGGINS, J. On October 31, 1917, Jno. Ames, J. B. Ames, Ada Marquis, and Ida Hinman, the last two named being joined by their respective husbands, as parties of the first part, entered into a mineral lease with the Texas & Pacific Coal & Oil Company, second party, the material portions of which read as follows:

"Witnesseth, the first parties, in consideration of fifteen thousand two hundred dollars to them paid, the receipt of which is hereby acknowledged, and the covenants hereinafter contained on the part of second party, do by these presents let and lease to second party for a period of seven years from the date hereof the following described premises situated in the county of Eastland and state of Texas, to wit: An undivided one-half interest in and to 113 acres more or less, out of [here follows a description of the land], hereby granting to second party full and exclusive authority to enter upon said premises and to dig, drill, operate for, and procure natural gas or petroleum, together with the right of taking upon said premises and removing therefrom at pleasure any machinery, tools, lumber, pipe, casing, and other things necessary in said work and to construct on said premises and remove therefrom at pleasure pumping plants, tracks, tanks, pipe lines, and other things necessary in the operation of this lease, avoiding as far as practicable damage to fences and growing crops; but in case of damage to these second party agrees to pay such damage, the same to be fixed by appraisers, should the parties hereto fail to agree to the amount of same.

"Beginning at the expiration of twenty-four months from date hereof, second party agrees to pay J. B. Ames, one of the first parties, one year in advance ground rent, viz. $3,800. Beginning at the expiration of twelve months from the date hereof, second party agrees to pay the other first parties named above ground rent, viz. $1,900 each, less the amount of any royalties paid by second party to first parties during the preceding year; and should the royalties paid during the preceding year equal or exceed the ground rent for the ensuing year, first parties agree to accept said royalties as full payment of ground rent for said year.

"Should second party discover on said premises natural gas in paying quantities and the same can be marketed to advantage, second party shall pay first party a royalty of 10 per

cent. of the market price at the wells of the amount sold.

"In the event of the sale or marketing of petroleum, second party shall deliver as royalty to first parties, in tanks near the mouth of the well or wells, without cost to first parties, one-eighth of such products, or pay the market price in cash thereof, at option of second parties, and the remainder of such products shall belong to the party of the second part.

"A deposit of the moneys herein provided for to the credit of first parties in the Farmers' & Merchants' State Bank in the city of Ranger, Tex., shall be taken and accepted by them as payment. * * *"

On November 2, 1917, the first parties to the foregoing instrument joined in the execution of a mineral deed to B. S. Walker wherein for a recited cash consideration of $11,300 they—

"bargained, sold, assigned, and conveyed, and by these presents do hereby bargain, sell, assign, and convey, unto the said B. S. Walker, an undivided one-half interest in and to all natural gas, oil, petroleum, coal, and all other minerals and mineral substances in, on, and under the following described lot, tract, or parcel of land, lying and being situated in Eastland county, Tex., and being 113 acres of land out of the Wm. Frells survey and fully described in lease from ourselves to Texas & Pacific Coal Company, and being more particularly described by metes and bounds as follows: [Here follows a description of the same premises described in the foregoing mineral lease—] together with the right to enter thereon, open mines, drill wells, lay pipes, and erect all structures and appliances necessary or convenient in searching for, procuring, caring for, storing, and removing any natural gas, oils, petroleum, coal, or other minerals or mineral substances of whatever nature and kind whatsoever that may be found thereon or thereunder, and to erect telephone and telegraph lines for use in the business thereon, together with the right to remove all structures and appliances at will.

"It is especially and expressly understood and agreed that the surface of the above-described land is conveyed only for all purposes and uses above set forth. This is sold and transferred, however, with the understanding that the Texas & Pacific Coal Company has a mineral lease on the above described tract of land.

"To have and to hold the same unto the said B. S. Walker his heirs and administrators, executors, and assigns forever."

On June 23, 1919, the said B. S. Walker executed and delivered to Wm. Black and Jack Black a mineral deed whereby he—

"granted, sold, conveyed, assigned, and delivered, and by these presents do grant, sell, convey, assign, and deliver, unto the said grantees, an undivided one-fourth interest in and to all of the oil, gas, and other minerals in and under and that may be produced from the following described land situated in Eastland county, Tex., to wit: And being 113 acres of land out of the Wm. Frells survey and fully described in lease executed by J. B. Ames et al. to the Texas & Pacific Coal Company, and

more particularly described by metes and bounds as follows: [Here follows a description of the same lands embraced in the two preceding instruments.]

"Together with the right of ingress and egress at all times for the purpose of mining, drilling, and exploring said land for oil, gas, and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of Texas & Pacific Coal Company, it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-fourth of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease.

"It is understood and agreed that one-fourth of the money rentals which may be paid to extend the term within which a well may be begun, under the terms of said lease is to be paid to the said grantees, and in event that the above-described lease for any reason becomes canceled or forfeited, then and in that event an undivided one-fourth of the lease interest and all future rentals on said land for oil, gas, and other mineral privileges shall be owned by said grantees, they owning one-fourth of all oil, gas, and other minerals in and under said lands, together with one-fourth interest in all future rents. [Here follows the usual habendum and warranty clauses common to general warranty deeds.]"

On August 30, 1919, the Texas & Pacific Coal & Oil Company brought this suit against the said J. B. Ames, Jno. Ames, Ada Marquis, and her husband, Ida Hinman, and her husband, and B. S. Walker. The object of the suit was to obtain a determination of the conflicting claims of Walker and the lessors in the mineral lease to the ground rentals accruing subsequent to the execution of the mineral deed to Walker.

The lessors answered, claiming the rentals under an oral reservation thereof agreed to by Walker, which reservation was omitted from the deed under the mutual mistake that it was unnecessary to incorporate the same therein.

Walker denied these allegations and claimed one-half of the rentals under his deed.

By trial amendment the lessors set up:

That they were not learned in the law; that they "relied upon the representation of the defendant B. S. Walker that he did not claim any of the annual rental money and did not claim that the deed provided for any annual rental money, and that all that he wanted was his part of the production; that they were induced to cause to be left out of said deed any stipulation with reference to whom the rental money should be paid, and were induced to sign the mineral contract in question without having first stipulated herein expressly that the said B. S. Walker was not to receive any of the future ground rents from the Texas & Pacific Coal & Oil Company under the lease: that such representations on the part of B. S. Walker were material representations and inducements which caused the said defendants, J. B. Ames, and others to sign said instrument; that at the time said B. S. Walker made said

representation he did so for the purpose of defrauding these defendants J. B. Ames and others; and that such representation on the part of B. S. Walker was and constituted a legal fraud upon the rights of defendants, and but for which said fraudulent acts of the said B. S. Walker these defendants J. B. Ames and others would not have signed said instrument without first having expressly stipulated therein that the said B. S. Walker was not to receive any of the future ground rents from the Texas & Pacific Coal & Oil Company, under and by virtue of the said lease."

The Blacks intervened, claiming one-fourth of the rentals as innocent purchasers for value under the deed from Walker.

The case was submitted to a jury upon special issues as follows:

"First. Did B. S. Walker represent to the defendants J. B. Ames, John Ames, and Mrs. Ada Marquis that he did not claim and was not seeking a conveyance of any future rentals enuring by virtue of the Texas & Pacific Coal & Oil Company lease? Answer 'Yes' or 'No.'

"Second. Did the defendants J. B. Ames, John Ames, and Mrs. Ada Marquis rely upon such statements and representations of B. S. Walker, if such have found he made such statements and representations, and were they thereby induced to execute the instrument in controversy? Answer 'Yes,' or 'No.' "

Both issues were answered in the affirmative.

The judgment is lengthy and complicated. It is sufficient to say that it protected the interveners and was in favor of the lessors in the mineral lease as against Walker's claim to any of the rentals. Walker alone appeals. The lessors in the mineral lease will be designated as the appellees.

## Opinion.

The first eleven assignments complain of the overruling of special exceptions, the admission of evidence, and refusal to strike out such evidence, and refusal of a peremptory instruction in favor of appellant. They all relate to one proposition, namely: That the legal effect of the mineral deed executed by appellees to the appellant was to vest in the latter the right to one-half of the subsequently accruing ground rentals to be paid by the Texas & Pacific Company, and that parol evidence was inadmissible to alter, vary, or contradict such legal effect by showing a contemporaneous oral agreement that such rentals were reserved to the appellees. Upon this phase of the case appellee John Ames testified:

"Mr. B. S. Walker came to me and wanted to buy one-half of the royalty in our land, and I told him I did not want to sell it. We kept on talking and I told him I didn't understand this royalty business, and I asked him what he got, and he explained. * * *

"I asked B. S. Walker to explain to me just what royalty meant. I didn't know anything about it, and he said if they drilled on my land and got production he would get his half of the royalty then. I didn't tell him that I would take that for the royalty. I went on then and struck him again, and we talked it over, and we decided to take this for the royalty. I said to Mr. Walker: 'Does this royalty business have anything to do with the lease money, the rental money?' And he said it did not, and he said where he got his money was when they got production. * * *

"I think Mr. Caldwell drew this contract. Mr. Walker explained the contract, that I was to get one-half of one-eighth of the royalty, and no lease money, no rental money, whatever. It had nothing to do with the rental money. * * *

"As well as I remember, Mr. B. S. Walker and Mr. Weeks—I can't say whether Caldwell was with them or not—came to me with the contract that I signed. I asked Mr. Walker again if that contract had anything to do with the lease money, and he said it did not. Mr. Walker told me that the contract did not call for any of the lease money at all, and Mr. Weeks said the same thing. It was my agreement with Mr. B. S. Walker that he was not to draw any of the lease money. I don't know whether I asked Mr. Walker or his attorney at that time whether it was necessary to specify in the royalty contract that he was not to receive any of the lease money, as they said he wasn't to get any lease money, and Mr. Weeks told me himself it did not call for any lease money.

"I was present when my sister, Mrs. Hinman, signed this contract, and heard a conversation between her and Mr. B. S. Walker at that time. She asked Mr. Walker if the contract had anything to do with his getting any of the lease money, and Mr. Weeks and Mr. Walker both told her it did not, and I think she asked them twice about it. They said it did not, and, as I remember, Mr. Walker and Mr. Weeks both explained to her like they did to me about the royalty, that if they drilled on the land and got production, then they got their part of royalty money, and they also told me that we were foolish; that they were taking all the chances themselves of getting their money. * * * Mr. Walker said at all times that he would get none of the rental money at any time; that all he was to get was the royalty. * * *"

Mr. Caldwell and Mr. Weeks mentioned in the testimony were attorneys for Walker.

J. B. Ames and Mrs. Marquis in substance testified to the same effect.

[1] It is well settled that upon a conveyance of the reversion in fee the grantee is entitled to the subsequently accruing rentals unless the grantor expressly reserves the same.

The instruments in the present case are not of the ordinary kind, and in view of their peculiar character, and particularly the fact that the mineral deed to Walker did not convey the entire reversion in fee, it may be debatable whether such deed, as a matter of law, carried with it the right to subsequently accruing ground rentals due by the Texas & Pacific Company under the mineral lease. But a determination of that question is not

necessary to the decision, and for the purpose of this case it will be assumed that the mineral deed, as drawn, carried such right with it.

[2] It is of course permissible under the issue of fraud to offer parol evidence in avoidance of a deed.

[3] By their trial amendment appellees presented an issue of fraud, and the evidence supports the same. The issues submitted by the court were upon this phase of the case, and the jury's findings were against the appellant. The evidence in effect shows a parol agreement that subsequently accruing rents were not to pass to Walker; that it was the true intention of all parties that he was to acquire only an interest in the royalty to be paid by the lessee in case oil was developed; that he and his attorney expressly represented to appellees that this was the effect of the deed and that it did not pass the right to any of the ground rentals, and the appellees relied upon these representations. This shows fraud practiced upon the appellees, and the appellant cannot avail himself of a right thus acquired. The fraud in question avoided the legal effect of the deed so far as concerned future rentals. Lott v. Kaiser, 61 Tex. 665; Mayer v. Swift, 73 Tex. 367, 11 S. W. 378; West v. West, 9 Tex. Civ. App. 475, 29 S. W. 242; Coughran v. Alderete, 26 S. W. 109.

The findings of the jury and presumed findings of the trial court support the judgment, and the assignments are without merit.

There is another phase of this question upon which appellees rely, namely: That evidence of the parol reservation of the rents was admissible for the purpose of showing the true consideration for the deed to Walker. In this they are well supported by authority in this state. Tipton v. Tipton, 47 Tex. Civ. App. 619, 105 S. W. 830, and ruling reaffirmed on second appeal. See 55 Tex. Civ. App. 192, 118 S. W. 842, and error refused; Applegate v. Kilgore, 91 S. W. 238; Hamilton v. Clark, 26 S. W. 515; Johnson v. Elmen, 24 Tex. Civ. App. 43, 59 S. W. 605; See, also, Bourne v. Bourne, 92 Ky. 211, 17 S. W. 443; Dralin on Deeds, §§ 311 and 766.

The correctness of the rule announced in these cases may be conceded. Had it been shown by the evidence that as a part of the consideration for the conveyance of the mineral interest to Walker he agreed that the appellees should collect the future ground rentals, the rule invoked and cases cited would be applicable. We doubt whether the evidence is sufficient in that respect, for there seems to have been no question between the parties as to the matter of the consideration. The oral agreement and representations made by Walker related to what passed by the deed rather than to any matter of consideration. For this reason we prefer to base our ruling upon the issue of fraud.

Under the twelfth, thirteenth, and fourteenth assignments complaint is made of the submission of issue No. 1 upon the ground that there was no legal evidence to warrant its submission. Upon the views heretofore expressed the parol evidence was admissible upon the issue of fraud, and this position of the appellants is therefore not well taken.

[4] The fifteenth assignment complains of the submission of issue No. 2 because: First, it was based upon, and material only in connection with, issue No. 1, and issue No. 1 was not permissible; second, that the form of the issue was objectionable as suggesting the answer. The first objection to this issue is controlled by the ruling made that issue No. 1 was properly submitted. As to the second objection, the issue directed the jury to answer the same "Yes" or "No," and, in our opinion, considering the issue as a whole, it did not suggest to the jury which way it should be answered.

[5] Under the sixteenth assignment complaint is made of the failure to render judgment in favor of the appellant notwithstanding the findings of the jury, because the findings were based on illegal testimony. In the first place, the testimony was competent. In the second place, it is not permissible to render a judgment in this state contrary to the jury's findings. The trial court has authority to set aside findings made by the jury, but cannot render judgment contrary thereto.

The seventeenth assignment is to the effect that the judgment should be reversed because the verdict of the jury and judgment of the court below is not supported by legal evidence. We have indicated above the nature of the testimony upon the issue of a parol agreement, the false and fraudulent representations made by the appellant, and the same was competent evidence upon the issue of fraud. The insistence of the appellant that the verdict and judgment is unsupported by legal evidence is not well taken.

This disposes of all assignments presented by the appellant.

Finding no error in the assignments urged, the judgment will be affirmed.