GEORGE CONOVER, complainant,

*v.*

GUARANTEE TRUST COMPANY, defendant-appellant; HARVEY F. CARR, receiver, respondent.

Argued November 26th, 1923.   Decided May 19th, 1924.

The appellant, heretofore held guilty of breach of an express trust (*88 N. J. Eq. 450; 89 N. J. Eq. 584, 585*), now held disentitled to be subrogated to the rights of its *cestuis que trust* as against a guarantor of bonds held by them, and on which appellant was required to reimburse them in part.

---

On appeal from order in chancery advised by Vice-Chancellor Ingersoll.

*Mr. Clarence L. Cole,* for the appellant.

*Mr. Henry F. Stockwell,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

After the decision of the court of chancery in this cause, reported in *88 N. J. Eq. 450,* and its affirmance in this court (*89 N. J. Eq. 584, 585*), the vice-chancellor made a further order dated May 27th, 1920, fixing the cash liability of the appellant, Guarantee Trust Company, at $62,000 and interest, less $763.36 net proceeds of foreclosure sales, and after certain minor adjustments directed the balance of the $62,000 fund paid into court for distribution among the several bondholders in specified fractional parts, proportionate to their respective holdings. This seems to have been done.

The trust company, appellant, then made a claim on the receiver of the West Jersey Mortgage Company, one of the parties concerned in the scheme as "guarantor" for reimbursement *pro tanto* of what it had been obliged to pay, as follows:

1. (Scheduled as 39-A.) In its individual capacity: For the amount of mortgages held not to be authorized by the trust agreement and so improperly guaranteed by the mortgage company and improperly accepted by the trust company as collateral to the Ventnor Syndicate bonds, less a nominal sum realized by foreclosure sales under said mortgages, at which sales the trust company was the purchaser. The amount claimed under 39-A was $65,987.76.

2. (Scheduled as 39-B.) In its capacity as trustee: For deficiency arising on the foreclosure of three mortgages of $5,000 each, adjudged by the order of May 27th, 1920, to have been properly held for the trust; the trust company having bid the properties in at the nominal figure of $100 each, and the deficiency amounting to more than the face of the three mortgages.

The receiver rejected the first claim *in toto,* and as to the second, ruled that as the trustee had purchased at a nominal figure at the sales, it must show by competent and satisfactory proof the fair value of the properties covered by the $15,000 of mortgages, and that on being satisfied of such value the receiver would "make a definite adjudication of the amount to be allowed," and if not satisfied he would himself con-

duct an inquiry into such value. The branch of the claim designated 39-A was formally disallowed, and on appeal to the court of chancery the rulings of the receiver with ·respect to claim "39-A unliquidated" were sustained, substantially for the reasons given by him. The trustee now appeals to this court.

Although the relations of the parties and their respective rights and liabilities under the trust agreement were adequately stated in the reported opinion of Vice-Chancellor Leaming (*88 N. J. Eq. 450*), a repetition of ˙some of the salient features of that agreement will be useful. The Ventnor Syndicate, a land company, was to sell its lands from time to time and take back purchase-money mortgages. In order to realize on these, the scheme, as arranged and as elaborately set out in the so-called "trust agreement," was for the Ventnor Syndicate to issue its own bonds against the mortgages, and the trust company was to hold the purchase-money mortgages as collateral, and certify the Ventnor bonds against them to the public. The function of the West Jersey company was to make written appraisal of the purchase-money mortgages and to guarantee the payment of the Ventnor bonds "to the registered or other legal holder" thereof.

The scheme broke down in several ways. The guarantee company accepted mortgages not contemplated by the trust agreement and certified Ventnor bonds thereon. For this it was held liable to the holders in this suit. The West Jersey company became insolvent and a receiver was appointed. The Ventnor Syndicate met the same fate.

It should be obvious that the guarantee company is trying to recoup itself for what it had to pay for breach of its trust by a resort to the written guarantee of the Ventnor bonds by the West Jersey company. But it is not the owner of those bonds; so far as appears, they have never passed out of the hands of the several parties named in the decree of May 27th, 1920. It is stated in the brief that there is still owing $247.26 on each $1,000 bond. Hence, it seems plain that the trust company is not within the language of the

guarantee of the Ventnor Syndicate bonds, which runs "to the registered or other holder" of such bonds. As to the guaranty policy of the basic bonds and mortgages, that policy runs to "Guarantee Trust Company, *trustee,* and all subsequent owners and holders of the bond and mortgage described in schedule A, who shall give this (*West Jersey*) company notice and proof of ownership." ·It is based on the trust agreement, to which both companies were parties, and is ancillary to, and must be read with, it. So read, it is, as between the parties to that agreement, intended to cover mortgages held in conformity to the agreement, and not those held in violation of it; so that whatever its effect in favor of innocent subsequent holders for value, it should not avail this trustee so far as that trustee was false to its trust in accepting the mortgage at all.

So much for the language of the written covenants. We come now to the claim that the trust company, ·by being obliged to make good to bondholders their losses due to its breach of trust, should be subrogated to their rights as against this guarantor company. But we do not think the right of subrogation obtains in such a case. It is not allowed in favor of one who would thereby reap advantage from his own wrong-doing, nor to relieve a party from the consequences of his own unlawful act. *37 Cyc. 371, 372,* and cases cited. One seeking subrogation must come into court with clean hands. *37 Cyc. 373; German Bank* v. *United States, 148 U. S. 573.* The fact that the West Jersey company may have participated in the wrong does not help the matter, as, on well-settled principles both of law and equity, one wrong-doer cannot recover from the other.

The second branch of the claim, designated 39-B, is presented in the briefs as though the receiver's ruling thereon were before us; but as the decree of the court of chancery on appeal from the determination of the receiver, and brought before us on this appeal, is confined to the part of the claim called 39-A, the scope of our decision is, of course, similarly restricted.

The decree appealed from will be affirmed.

*For affirmance* — The Chief - Justice, Trenchard, Parker, Minturn, Kalisch, Black, Katzenbach, Campbell, Gardner, Van Buskirk, Clark—11.

*For reversal*—None.