GORDON N. IBY ET UX. *v.* SOPHIA C. WRISLEY ET AL.

November Term, 1931.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed January 6, 1932.

*Chas. F. Black* and *Robert W. Ready* for the plaintiffs.

*H. A. Bailey* for the defendants.

MOULTON, J. This is a proceeding in chancery and is here upon the plaintiffs' appeal from a decree of the chancellor sustaining a demurrer to the bill of complaint, as amended, and dismissing the bill.

The material allegations of the bill are these: On June 11, 1928, the defendant Mrs. Wrisley sold a farm and personal property thereon to the plaintiffs. The farm was subject to a first mortgage to the Essex Trust Company, which the plaintiffs assumed and agreed to pay. The plaintiffs paid a certain sum in cash, transferred a house and lot at an agreed valuation, and gave Mrs. Wrisley a second mortgage upon the real estate and a chattel mortgage upon the personal property to secure the balance, which amounted to $2,700, and was payable, by the terms of the mortgage note, $100 every six months. During the plaintiffs' occupancy of the premises they sold, traded, or exchanged a part of the livestock covered by the chattel mortgage, believing that they had the right to do so, although the mortgage gave them no such privilege, and they had no permission from Mrs. Wrisley. Other livestock was obtained by purchase or exchange, which although smaller in number, is claimed to be of better quality than that disposed of, and of greater value. The plaintiffs also purchased and installed new farm equipment and repaired and improved the buildings so that the value was enhanced. The instalments on the note were duly paid by them during their occupancy.

On January 1, 1930, the plaintiffs sold the farm and all the personal property thereon to the defendants Charles F. Wolfe and his wife subject to the payment of the mortgages to the trust company and to Mrs. Wrisley. The plaintiffs thought that all the personal property which included the new livestock, was covered by the chattel mortgage and so represented the matter to the Wolfes, who accepted it in the belief that it was so encumbered and who assumed and agreed to pay the entire indebtedness.

On January 25, 1930, Mrs. Wrisley brought an action of trover against the plaintiffs, alleging the conversion of the livestock sold or exchanged by them, which cause is now pending in Chittenden county court. Upon learning that the provisions of the chattel mortgage were not sufficient to give Mrs. Wrisley, as mortgagee, a legal claim upon the after-acquired personal property, the plaintiffs demanded that she accept either a new

chattel mortgage covering all the personal property, or a supplemental mortgage covering the property purchased by the Wolfes and not included in the original one; but Mrs. Wrisley refused to do so.

On July 21, 1930, the Wolfes sold the farm and all the personal property thereon to the defendants Charles J. Tatro and wife, who had knowledge of all the foregoing facts, and who purchased the property subject to the payment of all the mortgages thereon. The personal property so conveyed was with certain exceptions the same that was purchased by the Wolfes from the plaintiffs. Mrs. Wrisley approved and consented to the sale to Tatro and wife, and entered into a written agreement with them, by the terms of which the Tatros are to cancel a debt of about $1,500 owing by Mrs. Wrisley to them, in part payment of the balance due upon the original note of $2,700 and are to give her a chattel mortgage upon all the personal property to secure the payment of what may be left, all of which is to be done after the final determination of the action at law between Mrs. Wrisley and the plaintiffs. The Tatros are ready and willing to give this mortgage, and the property to be covered by it is as great in value as that originally mortgaged by the plaintiffs.

It is further alleged, in substance, that there is, as the matter stands, adequate security for the balance due on the $2,700 note, and the security would be still better if the Tatros should execute the proposed mortgage above mentioned; and that Mrs. Wrisley has not been damaged by the acts of the plaintiffs, but, on the contrary, is in a position where, if she insists on her rights against them, she will be unjustly enriched; and that the plaintiffs would suffer irreparable injury because their rights as against the Wolfes and the Tatros cannot be determined until the claim of Mrs. Wrisley is adjusted; and that the plaintiffs have no adequate relief at law.

The prayers are that the action at law may be enjoined, that the rights of all the parties may be determined in this proceeding, and for general relief. An injunction is also sought against the consummation of the agreement between Mrs. Wrisley and the Tatros.

The plaintiffs' argument as presented in their brief amounts to this: That when they sold to the Wolfes, who assumed and agreed to pay the mortgages, they became sureties for the debt,

and the Wolfes the principal obligors; that whatever damages Mrs. Wrisley may obtain against them in the trover suit must be applied upon the balance due on the mortgage note, and that therefore they will be subrogated to a proportional part of the security as against the Wolfes and the Tatros; that the transfer to the Wolfes was made under a mutual mistake of fact, since it was supposed and understood that all of the livestock conveyed was subject to the mortgage, and for this reason the instrument ought to be reformed to correspond with the understanding; that the Tatros, since they knew the exact situation of the personal property which they purchased, and that part of it was unencumbered, but that the plaintiffs and the Wolfes believed otherwise when the transfer between them took place, are not *bona fide* purchasers, and consequently the contract ought to be reformed as against them; and, finally, that the consummation of the agreement between Mrs. Wrisley and the Tatros would conflict with the right of the plaintiffs to have the contract reformed.

The defendants, in their brief, concede that the amount of the judgment when obtained and satisfied, is to be credited upon the mortgage debt, and so we proceed upon this basis.

The claim that the plaintiffs will be entitled to subrogation to a part of the mortgage security upon payment of whatever judgment may be obtained against them by Mrs. Wrisley is unsound. It is true that they are sureties for the debt. *Perry* v. *Ward,* 82 Vt. 1, 4, 71 Atl. 721. But they have as yet paid nothing as sureties, nor is there any present liability upon them as such, for there has been no default in payment of the note by those primarily liable. Neither is it claimed that the amount of the anticipated judgment, if satisfied, will be sufficient to extinguish the indebtedness. The doctrine of subrogation is one of the benevolences of the law, and the tendency is to extend rather than to restrict its application. *Hall* v. *Windsor Savings Bank,* 97 Vt. 125, 133, 121 Atl. 582. There are, however, limits to its pertinency. "Unless the surety pays the debt in full, he is not entitled to subrogation; and until this is done the creditor will be left in full possession and control of the debt and the remedies for its enforcement." *Musgrave* v. *Dickson,* 172 Pa. St. 629, 33 Atl. 705, 706, 51 A. S. R. 765. A *pro tanto* subrogation will not be allowed, since it would have the effect of giving distinct and conflicting interests in the same debt to both creditor

and surety. *Gannett* v. *Blodgett,* 39 N. H. 150, 154. It would be manifestly unjust and a violation of the creditors' rights to compel the relinquishment of any part of the security before the obligation had been fully complied with. *Wilcox* v. *Fairhaven Bank,* 7 Allen (Mass.) 270, 272; *Barton* v. *Matthews,* 141 Ark. 262, 216 S. W. 693, 9 A. L. R. 1594, 1596, and see cases cited in notes 9 A. L. R. 1596, 32 A. L. R. 568; 25 Rul. Cas. Law, 1318. Subrogation will never be granted to the prejudice of other rights of equal or higher rank. *Gawthrop Co.* v. *Fibre Specialty Co.,* 257 Pa. 349, 101 Atl. 760, 761.

Furthermore, this controversy has its origin in the wrongful act of the plaintiffs in selling the mortgaged livestock without permission. That they believed they had the right to do so is immaterial, because ignorance of their legal obligations is not a defense. The present proceeding appears to be an ingenious attempt to extricate themselves from an unpleasant situation by shifting the burden of the consequences of their act to the Wolfes and the Tatros, who had nothing to do with it.

The plaintiffs are not liable as sureties, but as tortfeasors. Having converted to their own use a part of the mortgaged property, they cannot enforce what is in effect a claim for contribution from subsequent holders of the rest of the property. The doctrine of subrogation is not to be applied in aid of a wrongdoer. Equity will grant no relief under such circumstances. *Milwaukee & Minnesota T. Co.* v. *Soutter et al.,* 13 Wall. 517, 20 L. ed. 543, 546; *Gilbert* v. *Finch,* 173 N. Y. 455, 66 N. E. 133, 134, 61 L. R. A. 807, 93 A. S. R. 623; *Thompson* v. *Davis,* 297 Ill. 11, 130 N. E. 455, 458. Nothing alleged in the bill of complaint affects Mrs. Wrisley's right to proceed with her action at law.

The argument that the chattel mortgage should be reformed for mutual mistake is even more flimsy. There was no mutual mistake. As used in equity, this term means a mistake common to all the parties to a written contract or instrument. *New York Life Ins. Co.* v. *Kimball,* 93 Vt. 147, 151, 106 Atl. 676. Mrs. Wrisley is a party to the mortgage, and there is no claim that she participated in any misunderstanding concerning its contents or its legal effect. A mistake in which only the plaintiffs and the Wolfes shared is not sufficient to authorize a decree which would in effect make a new mortgage and compel its acceptance by the mortgagee.

154

No rights of the plaintiffs will be invaded if the Tatros give Mrs. Wrisley an additional mortgage covering the unencumbered livestock. *Lincoln* v. *Bassett*, 23 Pick. (Mass.) 154, 155. Indeed, it is not clear why they seek to enjoin this transaction, since both in their bill of complaint and in their brief they insist that it is what ought to be done. It is quite conceivable that the carrying out of the agreement may be to their advantage, because if the Tatros should thereafter make default, there would be, by reason of the proposed credit, a smaller sum for them to pay; and by reason of the mortgage a larger security to which they would be entitled by subrogation when they had made good their obligation as sureties. *Bank of Montpelier* v. *Dixon*, 4 Vt. 587, 599, 24 A. D. 640. Mrs. Wrisley will not be unjustly enriched. All that she will be entitled to receive is the amount due upon the mortgage indebtedness.

It is unnecessary to consider that ground of the demurrer which urges that there is a misjoinder of parties, further than to say that since the plaintiffs are endeavoring to enforce a different alleged right against each of the defendants, or groups of defendants, with a separate issue in each instance, the bill while in form a single proceeding "is in reality a bundle of separate suits." *International Paper Co.* v. *Bellows Falls Canal Co.*, 88 Vt. 98, 102, 90 Atl. 943, 946. Even if the contentions of the plaintiffs were otherwise sound, nothing would be gained by the assumption of equitable jurisdiction.

*Decree affirmed, and cause remanded.*