### ROTGE et al. v. DUNLAP et al.
### No. 3347.

Court of Civil Appeals of Texas. El Paso.
Jan. 30, 1936.

Rehearing Denied Feb. 27, 1936.

band, joined by Domingo R. Rotge, Jr., her coexecutor and son, executed a note for $35,000, in favor of B. H. Dunlap, secured by deed of trust executed by the same parties upon five parcels of land. The fifth tract described in the deed was the homestead of Mrs. Rotge in Harlingen, Tex. The sum mentioned was loaned by Dunlap to enable Mrs. Rotge to pay existing liens in various amounts against the different parcels. The existing liens against the homestead were for paving and taxes and amounted to $3,316.27. The deed of trust describes the existing liens and contains a subrogation agreement which reads: "All of said above described indebtedness have been purchased by the said B. H. Dunlap, at the special instance and request of the Grantors herein, and it is here now expressly stipulated, understood and agreed that the original liens and securities securing said original indebtedness so purchased are here now continued in full force and effect and are not released, but the said B. H. Dunlap is in all things subrogated to all of the rights of the original lien holders of such indebtedness, but that such original indebtednesses are carried forward and evidenced by the note this day given and above described and are further secured by this deed of trust, which is cumulative of all the other securities so renewed and extended."

Two of the parcels were released from the lien of the deed of trust upon a partial payment of $15,000 made upon the note.

This suit was brought by the Rotges to enjoin a threatened sale by the trustee of the three unreleased parcels. The defendant Dunlap, by cross-action, sought recovery upon the note and foreclosure of the deed of trust. In the alternative Dunlap invoked the doctrine of subrogation and sought to foreclose the pre-existing liens against the respective parcels. No question arises upon this appeal attacking the validity of the deed of trust except as to the homestead.

The plaintiffs alleged:

"Plaintiffs allege that the main negotiations with respect to said deed of trust were made by Plaintiff Feliciana Cisneros de Rotge, and that the coplaintiff signed said instrument at the request of said Feliciana Cisneros de Rotge; that she was the one who really managed the properties of her deceased husband and herself, and Plaintiff Domingo R. Rotge, Jr., was governed by her wishes in respect to the management of said property. Plaintiffs say that Feli-

L. J. Freeman, of Beeville, for appellants.

H. L. Faulk, of Brownsville, for appellees.

HIGGINS, Justice.

On October 4, 1930, Feliciana Cisneros de Rotge, individually and as independent executrix of the estate of her deceased hus-

ciana Cisneros de Rotge, the surviving widow of Domingo R. Rotge, Sr., deceased, was at the time of the execution of the deed of trust in question and the negotiations leading up to said execution of an advanced age; that she reads and speaks Spanish, but she cannot read English, and understands only a very little of the English language. Plaintiffs say that Feliciana Cisneros de Rotge has not had a wide experience in business transactions but that during her husband's lifetime her husband transacted all business and that she is not experienced in the ways and manner of transacting and carrying on business negotiations. Plaintiffs say that B. H. Dunlap is a man of wide business experience and is now and has been over a long period of time the cashier of the First National Bank at La Feria, Texas. * * *

"Plaintiffs allege, upon information and belief, that said B. H. Dunlap knew of the claim of plaintiffs herein with regard to the homestead and the facts hereinabove alleged, and also knew or had been advised by his attorney that if the said Feliciana Cisneros de Rotge included said homestead in said deed of trust that it would be binding upon her as such, in that her husband was at that time dead. Thereupon plaintiffs allege that the said B. H. Dunlap requested the said Feliciana Cisneros de Rotge to place said homestead tract in the deed of trust, whereupon plaintiff Feliciana Cisneros de Rotge refused to do so. Plaintiffs allege that thereupon said B. H. Dunlap stated, in substance, that the placing of said homestead tract in the deed of trust would be done as a mere formal requirement; that the homestead would not be affected by said deed of trust and be in no danger if placed therein. And further, that in no event would he foreclose said property, and that the tracts hereinabove described as Tracts 1, 2, 3 and 4 were the only tracts that the lien would be upon to secure said note."

It was further alleged Mrs. Rotge believed and relied upon Dunlap's representations and was thereby induced to include the homestead tract in the deed of trust.

Mrs. Rotge testified, in substance, she was a woman of about sixty-seven or sixty-eight years of age, the surviving wife of Domingo R. Rotge, Sr., to whom she had been married for about thirty-five years. Her husband was dead. That during his lifetime he had transacted all the business of the family. The property in Harlingen designated as the "homestead tract" had been their home, and she had lived there for the last twenty years of her married life, and still lived there. She could speak and read Spanish, but could not read English, and understood very little English when it was spoken to her. Appellee Dunlap advised her that he was a good friend of her deceased husband and that he wanted to lend her money on her ranches to take up all of her outstanding indebtedness; that he looked upon her as his mother and to have confidence in him. She further testified that prior to the execution of the deed of trust Dunlap said the homestead tract would be included in the deed of trust as a mere matter of form; that the property would run no risk since it was her homestead, and the homestead rights would be respected. These statements and statements of substantially the same nature were repeated to her, according to her testimony. Her testimony further reflects that she believed said statements and was induced to place the property in the deed of trust by reason thereof.

Appellee Dunlap testified he was a banker, having been in the banking business twenty-seven years. He agreed to make a loan to cover all of the indebtedness outstanding of Mrs. Rotge. Dunlap admitted appellant first refused to put in the homestead tract with the other tracts, which were ranch lands, but he refused to make the loan unless the same was included. Dunlap further testified Mrs. Rotge knew he had been a close friend of her husband and that she regarded him as her friend. Dunlap's attorney testified that prior to the time of the taking of the deed of trust he had advised appellee that if he took a deed of trust on the homestead tract it would be valid. Dunlap's testimony shows he intended to enforce the payment of the note in event of default in payment of same by foreclosure against the homestead. He denied, however, the making of any representations with regard to the inclusion of said homestead tract. He testified no explanation was made to Mrs. Rotge that in the event the deed of trust was not valid against the homestead that he would be entitled to enforce the tax and paving liens by way of subrogation. Appellee introduced tax receipts showing the payment of taxes upon the homestead tract, and also introduced paving liens which he had in his possession purporting to create liens against the homestead tract.

The issues submitted read:

1. "Do you find from a preponderance of the evidence that B. H. Dunlap on October 4, 1930, represented in substance to plaintiff, Feliciana Cisneros de Rotge, that the homestead tract was being put in the deed of trust as a mere formality and that it would be in no danger of foreclosure if placed therein?"

2. "Do you find from a preponderance of the evidence that plaintiff, Feliciana Cisneros de Rotge believed such representation of B. H. Dunlap, if said representation was made, to be true?"

3. "Was such representation, if any, a material inducement to plaintiff to enter into and execute the deed of trust in controversy?"

All issues were answered: "Yes."

The judgment rendered in Dunlap's favor may be summarized as follows:

For $26,033.79 and $4,078.98. The last-mentioned sum represents the amount of paving and tax liens against the homestead discharged by Dunlap when he made the loan plus interest to date of judgment at 6 per cent. per annum from October 4, 1930. To secure the payment of the $26,033.79, foreclosure was awarded upon the unreleased lands other than the homestead, and proceeds of the sale ordered applied first to the payment of the $26,033.79, and balance, if any, to payment of the $4,078.98. Foreclosure against the homestead was also awarded and proceeds of sale ordered applied to the payment of the $4,078.98. It was ordered the homestead be not sold unless the proceeds of the sale of the other lands were insufficient to satisfy the judgment for both of above sums.

From this judgment the Rotges appeal, complaining only of that portion of the judgment awarding foreclosure against and sale of the homestead.

## Opinion.

■ Under the authorities in this state, the findings of the jury establish fraud practiced upon Mrs. Rotge inducing her to include the homestead in the deed of trust. Such fraud avoided the deed in so far as concerns the homestead. Ramey v. Allison, 64 Tex. 697; Walker v. Ames (Tex.Civ. App.) 229 S.W. 365; Holt v. Gordon (Tex. Civ.App.) 176 S.W. 902; West v. West, 9 Tex.Civ.App. 475, 29 S.W. 242; Bourland v. Huffhines (Tex.Civ.App.) 244 S.W. 847.

We do not concur in the contention of appellee that the findings and evidence are insufficient to show actionable fraud. The authorities cited above are to the contrary.

The trial court was apparently of the same opinion, for the judgment as it affects the homestead is evidently based upon the doctrine of subrogation. The recitals in the judgment show that foreclosure against the homestead was awarded only to the extent of the tax and paving liens paid by appellee and assigned to him.

■ The right of subrogation is legal or conventional. Legal subrogation is a creature of equity. The right thereto is governed by equitable considerations and arises by operation of law. Conventional subrogation rests on contract. 60 C.J. title Subrogation, §§ 2, 3–12; International & G. N. Ry. Co. v. Concrete Inv. Co. (Tex.Civ.App.) 201 S. W. 718; Id. (Tex.Com.App.) 263 S.W. 265; Fears v. Albea, 69 Tex. 437, 6 S.W. 286, 5 Am.St.Rep. 78.

■ The findings show fraud on Dunlap's part inducing the grantors to include the homestead tract in the deed. He does not come into court with clean hands, and is therefore not in a position to invoke the equitable principles upon which legal subrogation rests. City Nat. Bank v. Riggs, 189 Ark. 123, 70 S.W.(2d) 574; Johnson v. Moore, 33 Kan. 90, 5 P. 406; Leinbach v. Dyatt, 117 Kan. 265, 230 P. 1074; Border State Lumber Co. v. Edwards et al., 103 S. C. 391, 88 S.E. 537; German Bank of Memphis et al. v. United States, 148 U.S. 573, 13 S.Ct. 702, 37 L.Ed. 564; Petty v. Adams, 65 Okl. 60, 162 P. 1082; In re Hays' Estate, 159 Pa. 381, 28 A. 158; Bates v. Swiger, 40 W.Va. 420, 21 S.E. 874; Iby v. Wrisley, 104 Vt. 148, 158 A. 67; Conover v. Guarantee Trust Co., 96 N.J.Eq. 313, 125 A. 140; Troyer v. Bank of DeQueen, 170 Ark. 703, 281 S.W. 14; In re Farmers' & Merchants' Bank of Chillicothe (Mo.App.) 63 S.W.(2d) 829.

■ Nor can he invoke conventional subrogation, because the subrogation agreement in the deed of trust, in so far as it affects the homestead, is avoided by the same fraud which avoids the deed of trust lien itself.

■■ Appellee also insists appellants cannot avoid the lien upon the homestead without making tender of the amount of the paving and tax liens which were paid with a part of the money loaned. The general

rule is that one seeking to rescind and cancel a contract must protect the equitable rights of the defendant and restore that which he has received under the contract. But the rule has its exceptions. In this case plaintiffs contemplated that the entire $35,000 would be loaned without encumbrance upon the homestead. By fraud they were induced to include the homestead in the deed. To apply the general rule in this case would, by indirection, fix a lien upon the homestead to the extent of the paving and tax liens and in effect permit Dunlap to escape the consequences of the fraud practiced. Under the circumstances here presented, appellants were not required to tender the amount of the paving and tax liens. 7 Tex.Jur. title, Cancellation of Instruments, §§ 47 and 49; 9 C.J. same title, §§ 95 and 97; Cearley v. May, 106 Tex. 442, 167 S.W. 725; Oar v. Davis (Tex.Civ.App.) 135 S.W. 710; Id., 105 Tex. 479, 151 S.W. 794; Anderson v. Anderson (Tex.Civ.App.) 40 S.W.(2d) 909; Gantt v. McClellan (Tex. Civ.App.) 252 S.W. 229; Dawson v. Sparks, 1 Posey, Unrep.Cas. 735.

■ Another contention made by appellee is that the evidence shows Mrs. Rotge did not rely upon the representation in question. This is regarded as untenable. The evidence upon this phase of the case raises an issue for the jury.

From what has been said it follows that upon the jury's finding this court is of the opinion foreclosure against the homestead should be denied and judgment here so rendered.

Appellees, in such contingency, have submitted certain cross-assignments which, if sustained, would call for remand for retrial rather than rendition here.

The first cross-assignment is based upon the assumption that the findings do not show actionable fraud. This is controlled by our first ruling above.

■ It is objected that issue 1 is duplicitous.

"There is no duplicity where the grouping is as to material facts upon a single ultimate issue."

"A grouping of facts necessary to present one ultimate issue is not a grouping of issues at all."

"It does not follow, however, that there cannot be a grouping of facts in a single interrogatory. On the contrary, it frequently happens that the ultimate fact issue being submitted is made up of more than a single fact element,—sometimes of a group of facts or fact elements, without the concurrence of all of such facts, the controlling fact issue would be incomplete and a finding thereon meaningless in law. So that, a proper grouping of facts as herein contradistinguished from issues, is not only allowable, but oftentimes is permissible and even indispensable. This is the essential doctrine of completeness."

"If separateness of issues is essential in the submission, equally so is completeness of each issue essential. Nothing short of the whole fact or group of facts constituting the issue will serve the ends of the law for without this there is no ultimate fact invoking the law. Such completeness should be found in the one issue and not in the aggregate of issues."

Speer on Special Issues, §§ 185, 94, 187, and 190.

■ The objection of duplicity is without merit. It is controlled by the rule so well stated by Judge Speer.

■ Complaint is made of the failure tc define or explain the phrases "mere formality" and "it would be in no danger," contained in the first issue. The issue was whether Dunlap made the representations referred to in the issue. The jury needed no definition or explanation of the phrases mentioned to enable it to properly determine whether the representations were or were not made.

■ Nor is the first issue misleading, ambiguous, or confusing as the appellee asserts.

The cross-assignments are all overruled.

The judgment will be reversed and here rendered in favor of Dunlap for the balance due upon appellants' note ($35,000 less payment of $15,000 made December 1, 1930), with interest and attorney's fees as provided in the note and foreclosure of lien on the unreleased lands, other than the homestead. Foreclosure upon the homestead tract is denied.

Reversed and rendered.